**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

HOWARD DENNIS KELLY,          :
                              :  Civil Action No. 05-1021 (FLW)
          Petitioner,         :
                              :
     v.                       :         **O P I N I O N**
                              :
WARDEN JOHN NASH, et al.,     :
                              :
          Respondents.        :

**APPEARANCES**:

    HOWARD DENNIS KELLY, Petitioner pro se
    #00525-032
    F.C.I. Fort Dix
    P.O. Box 7000
    Fort Dix, New Jersey  08640

    IRENE E. DOWDY, AUSA
    UNITED STATES ATTORNEY'S OFFICE
    402 East State Street, Suite 430
    Trenton, New Jersey 08608
    Attorneys for Respondents

**WOLFSON**, District Judge

    This matter is before the Court on petitioner's three separate motions to (1) re-open this matter, (Docket Entry No. 11); (2) to hold respondent Warden John Nash in contempt, (Docket Entry No. 12); and (3) to cite respondents for deliberate obstruction of justice, (Docket Entry No. 13).  Respondents have filed an opposition to all three motions (Docket Entry No. 14), and petitioner filed a reply (Docket Entry No. 15).  The Court

will consider all moving, opposition, and reply papers respecting the three motions pursuant to Fed.R.Civ.P. 78.

## BACKGROUND

Petitioner, Howard Dennis Kelly ("Kelly"), first asks the Court to re-open this case, which was closed pursuant to an Order of Dismissal entered on May 12, 2005. (Docket Entry No. 10). In his initial petition, Kelly challenged the respondents' decision to limit Kelly to 4½ months of placement in a Community Corrections Center ("CCC") for transitional purposes before the end of his sentence. Kelly argued that he is serving consecutive sentences for a total prison term exceeding 11 years, thus entitling him to the full six months CCC placement under 18 U.S.C. § 3264(c).

On April 12, 2005, the respondents filed a motion to dismiss on the grounds that the petition was moot because petitioner has been afforded the relief he seeks in the petition. Namely, the respondents recalculated Kelly's pre-release preparation date at July 14, 2005, a full six months before his projected release date of January 14, 2006. Based on respondents' declaration, the Court dismissed the petition as moot.

On June 17, 2005, Kelly filed a motion to re-open the case. In his motion, Kelly asserts that shortly after the petition was dismissed, the respondents reduced his CCC placement by 90 days. Kelly further contends that he has an exemplary behavior record

during his incarceration, with outstanding work performance evaluations and superior program participation for 10½ years. Kelly notes that he was given a commendation letter for preventing an assault of a female Bureau of Prisons ("BOP") employee, and a superior achievement award.

On June 21, 2005, Kelly filed a second motion to hold respondent Warden John Nash in contempt for reducing Kelly's CCC placement by 90 days in violation of the representation to this Court that petitioner would be afforded 180 days in CCC placement. On June 28, 2005, Kelly filed his third motion asking the Court to cite respondents for deliberate obstruction of justice. In particular, Kelly argues that respondents have disregarded their own administrative recommendations, after Kelly filed for an administrative remedy in February 2005. By response dated March 14, 2005, respondent Nash advised Kelly that he would be considered for CCC placement on July 14, 2005. Respondent failed to comply with this recommendation.

Respondents filed a letter in opposition to Kelly's motions on July 1, 2005. First, the Government states that Kelly's grievances about the duration of his end-of-sentence CCC placement is an individual challenge to the conditions of his confinement, and is not cognizable under a § 2241 habeas petition, citing Richmond v. Scibana, 387 F.3d 602, 605-06 (7th Cir. 2004). Second, the respondents argue that Kelly is not

3

entitled to six months CCC placement because inmates have no protected liberty interest in the assignment to a particular institution, facility, or rehabilitation program.  See Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Meachum v. Fano, 427 U.S. 215, 224-26 (1976); Young v. Quinlan, 960 F.2d 351, 358 n.16 (3d Cir. 1992); Gambino v. Gerlinski, 96 F. Supp.2d 456, 458-60 (M.D.Pa. 2000), aff'd, 216 F.3d 1075 (3d Cir. 2000).

Third, respondents "split hairs" with Kelly's contention that Warden Nash "promised" that Kelly would receive a full six months CCC placement.  Instead, the Government contends that Nash meant only that Kelly would be considered for CCC placement on or after July 14, 2005.  Finally, the Government argues that Kelly's recourse if dissatisfied with the result of the CCC review and referral process is through the administrative remedy process, which Kelly has not done.

## DISCUSSION

A. Jurisdiction

Preliminarily, the Court disagrees with the respondents' contention that a § 2241 habeas petition is not the proper vehicle in which to present petitioner's claims.  "Section 2241 is the only statute that confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the execution of his sentence."  Coady v. Vaughn, 251 F.3d 480, 485-86 (3d Cir. 2001).  An action under § 2241

"generally challenges the *execution* of a federal prisoner's sentence, including such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, types of detention and prison conditions." Jiminian v. Nash, 245 F.3d 144, 146 (2d Cir. 2001)(emphasis in original).[1] See also Hernandez v. Campbell, 204 F.3d 861, 864 (9th Cir. 2000)("petitions that challenge the manner, location, or conditions of a sentence's execution must be brought pursuant to § 2241 ..."); Pack v. Yusuff, 218 F.3d 448, 451 (5th Cir. 2000)("A section 2241 petition on behalf of a sentenced prisoner attacks the manner in which the sentence is being carried out or the prison authorities' determination of its duration ..."); Kingsley v. Bureau of Prisons, 937 F.2d 26, 30 (2d Cir. 1991)("challenges to the length, appropriateness or

---

[1] But see Wright v. Cuyler, 624 F.2d 455 (3d Cir. 1980), where the Third Circuit ruled that a § 1983 civil rights action was the appropriate vehicle for a state prisoner challenging a non-admission to a home-furlough program. The court noted that plaintiff's "demand for a fair application of the [program] eligibility criteria, as distinct from his demand for admission to the program, relates to the manner by which the prison authorities reach their decision and not the outcome of their decision." Id. 624 F.2d at 458 n.5. Thus, because the plaintiff was seeking fair decisionmaking procedures, rather than release, the action was a § 1983 claim. Id. See also Georgevich v. Strauss, 772 F.2d 1078, 1087 (3d Cir. 1985)(in banc), cert. denied, 475 U.S. 1208 (1986). Moreover, the Third Circuit recognized in both Wright and Georgevich that success in the § 1983 action might affect the duration of the prisoners' confinement, but this indirect, eventual consequence was not a sufficient reason to characterize the claims as exclusively maintainable as a habeas petition. See Tedford v. Hepting, 990 F.2d 745, 748 (3d Cir.), cert. denied, 510 U.S. 920 (1993).

conditions of confinement are properly brought under 28 U.S.C. § 2241"); <u>United States v. Ferri</u>, 686 F.2d 147, 158 (3d Cir. 1982), <u>cert. denied</u>, 459 U.S. 1211 (1983)(claims attacking the execution of a petitioner's sentence are properly brought under 28 U.S.C. § 2241).  A petition under § 2241 in the district where the federal inmate is confined provides a remedy "where petitioner challenges the effects of events 'subsequent' to his sentence." <u>Gomori v. Arnold</u>, 533 F.2d 871, 874 (3d Cir. 1976), <u>cert</u>. <u>denied</u>, 429 U.S. 851 (1976).

Indeed, "Section 2241 of title 28 has long been recognized as the basis for challenging the execution of the sentence of a person in federal custody or a person sentenced for violating a federal criminal statute."  <u>Zucker v. Menifee</u>, 2004 WL 102779, *3 (S.D.N.Y. January 21, 2004)(citing <u>Maleng v. Cook</u>, 490 U.S. 488, 493 (1989)(per curiam)).  Additionally, this Court has the authority to compel the BOP to exercise its discretion in selecting and designating a place for service of sentence.  <u>See McCarthy v. Doe</u>, 146 F.3d 118 (2d Cir. 1998).  Habeas corpus relief under 28 U.S.C. § 2241 is available to effectuate this authority to the extent that the prisoner is in any form of "custody" in this district.  <u>See</u> <u>Hensley v. Municipal Court</u>, 411 U.S. 345 (1973).

B.  Exhaustion of Administrative Remedies

Next, respondents argue that Kelly's proper recourse if dissatisfied with the result of the CCC review and referral decision is through the BOP's administrative remedy process. Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted all available administrative remedies.  See, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Arias v. United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981); Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973).  The exhaustion doctrine promotes a number of goals:

> (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy.

Goldberg v. Beeler, 82 F. Supp.2d 302, 309 (D.N.J. 1999), aff'd, 248 F.3d 1130 (3d Cir. 2000).  See also Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761 (3d Cir. 1996).  Nevertheless, exhaustion of administrative remedies is not required where exhaustion would not promote these goals.  See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where

it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"); Carling v. Peters, 2000 WL 1022959, *2 (E.D. Pa. 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

Here, the administrative remedy process would have been futile for Kelly. He has already passed the initial CCC placement date recommended, and it is unlikely that the BOP would have reversed its recalculated decision for a shorter CCC placement period, given the BOP's justifications for recomputing Kelly's CCC placement date. In Ferrante v. Bureau of Prisons, the court found that if the petitioner's claim were meritorious, he would be released to a halfway house relatively soon; therefore, dismissing the petition for lack of exhaustion would be futile. See 990 F. Supp. 367, 370 (D.N.J. 1998); see also Fraley v. Bureau of Prisons, 1 F.3d 924, 925 (9th Cir. 1993)(stating that exhaustion was not required because it was futile, as Regional Director would "almost certainly" have denied request, and term of imprisonment was completed).

Therefore, in this case, the Court will excuse the exhaustion requirement, as it would be futile to require petitioner to administratively exhaust his claim respecting the BOP's CCC placement review and referral process.

C.  <u>The Recalculated CCC Placement Date Is Justified</u>

The Court had dismissed this matter as moot based on the Government's representation that petitioner's pre-release preparation date was recomputed for July 14, 2005, six months before Kelly's projected release date of January 14, 2006.  In moving papers submitted to this Court on April 12, 2005, the Government stated to this Court that "[t]he BOP has afforded Kelly the sentence computation correction that he had sought, and there is no longer any live controversy for this Court to adjudicate under the habeas statute."  (Respondents' Memorandum of Law, pg. 8, Docket Entry No. 8-2).  However, the Government noted that not every inmate is eligible for CCC placement.  For instance, those inmates with unresolved pending charges or detainers; those designated as deportable aliens; those needing in-patient medical care; and those inmate who pose a significant threat to the community may be deemed ineligible for participation.  BOP Program Statement 7310.04, *Community Corrections Center (CCC) Utilization and Transfer Procedure,* Section 10.  (Resp. Mem. Of Law, (Doc. Entry No. 8-2), dated April 12, 2005, at pg. 7).

In response to Kelly's motions, the Government asserts that Kelly's CCC placement date was reviewed by his Unit Team at FCI Fort Dix, considering Kelly's transition needs and individual circumstances.  The Unit Team initially recommended a CCC

9

placement date for July 19, 2005.  A referral packet was forwarded for further internal review.  The Case Management Coordinator (CMC) Donahue reviewed the referral packet[2] and

---

[2]  Respondents describe the CCC review and referral process as follows:

> Unit Teams normally generate a CCC placement recommendation after a particular review that is normally scheduled within 11-13 months of the inmate's release date.  The Unit Team conducts the Program Review with the inmate to determine the inmate's eligibility based on his transition needs and individual circumstances.  These discussions include consideration of the inmate's current offense behavior, institutional adjustment, prior criminal record and proposed release plans.  His overall ability to successfully transition into the community, which is affected by the length of the inmate's sentence, his medical needs, his ability to find employment, his financial resources, and family ties are also reviewed.  After this program review, a referral packet is completed which includes any relevant medical and psychological information, classification materials and a recommended CCC placement date.  This recommendation is based on assessment of the inmate's needs for services, public safety, and the necessity of the [BOP] to manage its inmate population responsibly.
>
> The referral package is then processed through internal channels, which includes review by the Inmate Systems Manager, the Case Management Coordinator, the Associate Warden of Programs, the Executive Assistant, and the Warden. The Inmate Systems Manager reviews the referral package to determine whether the inmate has any pending charges or outstanding warrants.  The Case Management Coordinator reviews the referral package to ensure compliance with special needs for management, as well as overall compliance with [BOP] policy and consistent policy application across the institution.  Proper inmate classification is also required before an inmate receives clearance for participation in the community.  The Associate Warden of Programs and the Executive Assistant review the package to ensure overall compliance with [BOP] policy.  The Warden approves the package.  The official approval is a written document, called an "Institutional Referral for CCC Placement," which is on form (BP8210-073).

expressed concern that a six-month CCC placement was not appropriate for Kelly given his current and prior history, which included escape and violence.³  Based on Donahue's concern, the Unit Team reconsidered Kelly's CCC placement date and determined that a three month placement was reasonable to accommodate Kelly's transitional needs.  (Resp. Mem. Of Law, Doc. Entry No. 14, at pp. 4-5).

Based on these representations, the Court does not find the respondents' recalculation of a shorter CCC placement period to be a "deliberate obstruction of justice" or an act of contempt. The BOP had justifiable concerns against a longer CCC placement given Kelly's past parole violations, escape charge, and potential risk of harm to the community in light of his criminal history involving violence.  However, the Court is somewhat vexed by the Government's belated justifications for reconsidering Kelly's CCC placement, based on Kelly's *prior history* of escape and violence, after its initial representation to the Court in April 2005 that a pre-release preparation date would occur in

---

See Declaration of Robert Donahue, CMC at FCI Fort Dix, dated June 30, 2005, at ¶¶ 4-5.  (Docket Entry No. 14).

   ³ Kelly is serving a 57-month prison sentence for making threatening communications by agreeing to pay a third party to harm another.  Kelly had served a 30-month term for escape from a secure facility in 1995.  He has a prior criminal history of an armed robbery where a hostage was taken.  Kelly also had a series of parole violations.  See Donahue Declaration at P 9, and Exhibit 1a at pp. 3-13.

11

July 2005.  These issues regarding Kelly's current and prior history, which clearly affect decisions on CCC placement, should have been presented to the Court in the Government's initial motion to dismiss the petition.  Kelly's history of escape and parole violations, and his violent criminal record, are not new information.  This information was plainly part of Kelly's record when the respondents made their representation to the Court in April 2005.  In fact, the Government alluded to Kelly's prior history in its statement of the case, but did not argue that these factors would serve to preclude a full six months CCC placement, the very issue in controversy in Kelly's petition. Nevertheless, it appears that the representation was made to the Court before the CCC review and referral process was actually completed.  Thus, at worst, the respondents' representation in April 2005 was premature, and not purposefully misleading, as suggested by petitioner.

Further, the respondents' revised CCC placement date for Kelly is consistent with the applicable federal statutes and BOP policies respecting CCC referral decisions.

Federal law provides that prisoners shall, to the extent practicable, serve the last portion of their imprisonment under conditions that will facilitate their transition from prison life to the community.

> (c) Pre-release custody.--The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. ...

18 U.S.C. § 3624(c).

However, as stated above, not every inmate is eligible for CCC placement. Inmates with unresolved pending charges, detainers or designated as deportable aliens, and those inmate who pose a significant threat to the community may be deemed ineligible for participation. BOP Program Statement 7310.04, *Community Corrections Center (CCC) Utilization and Transfer Procedure,* Section 10. Here, Kelly's CCC placement was ultimately determined based on considerations affecting Kelly's potential threat to the community as evidenced by his documented history of escape, parole violations, and violence.

Thus, it is clear that the BOP's ultimate decision in this regard was within the agency's discretionary authority under § 3621(b), and the requirements of § 3624(c), based on its consideration of numerous factors, including Kelly's stated transitional needs and special supervision concerns.

There is no indication from the facts and circumstances considered in the CCC referral process in this case that Kelly was denied due process, or that the respondents' actions were in contempt of this Court or the law. In general, an inmate does

not have a liberty interest in assignment to a particular institution or to a particular security classification. See Wilkinson v. Austin, 125 S.Ct. 2384, 2393 (2005)(the Constitution does not give rise to a liberty interest in avoiding transfers to more adverse conditions of confinement); Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Montayne v. Haymes, 427 U.S. 236, 243 (1976); Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976)(noting that prison classification and eligibility for rehabilitative programs in the federal prison system are matters delegated by Congress to the "full discretion" of federal prison officials and thus implicate "no legitimate statutory or constitutional entitlement sufficient to invoke due process"). See also Sandin v. Connor, 515 U.S. 472, 484-86 (1995)(holding that a liberty interest is implicated only where the action creates "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or creates a "major disruption in his environment").

Moreover, the placement of prisoners within the federal prison system is among the "wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts." Id., 427 U.S. at 225.  Therefore, it appears that Kelly received all the process he was due in the BOP's discretionary decision as to his transitional CCC placement date.  Kelly's motion to re-open this

14

matter will be denied and the motions for an Order of contempt against the respondents for their alleged "deliberate obstruction of justice" will be denied for lack of merit.

## CONCLUSION

Therefore, for the reasons expressed above, Kelly's motions to re-open this case, and to find respondents in contempt and obstruction of justice will be denied. An appropriate Order follows.

s/Freda L. WOLFSON
FREDA L. WOLFSON
United States District Judge

DATED: October 18, 2005